UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
————————————————————————————

SHERRY RITTER,

                    Plaintiff,

        V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                 Defendant.
————————————————————————————

**REPORT AND
RECOMMENDATION**

09-CV-1167
(NAM/VEB)

## I. INTRODUCTION

In September of 2005, Plaintiff Sherry Ritter filed an application for disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that she has been unable to work since April of 2003 due to physical and mental impairments. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through her attorney, Peter W. Antonowicz, Esq., filed this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 17).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for DIB on September 20, 2005, alleging a disability onset date of June 2, 2004. (T at 32, 72-74).[1]  The application was denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held in Utica, New York on May 8, 2007, before ALJ Michael Brounoff.  Plaintiff appeared with counsel and testified.  (T at 449-492). Testimony was also received from a vocational expert. (T at 493-517).  Plaintiff's alleged onset date was amended at the hearing to April 6, 2003. (T at 449).

On March 28, 2008, ALJ Brounoff issued a written decision denying Plaintiff's application for DIB. (T at 20-31).  The ALJ's decision became the Commissioner's final decision on August 23, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 6-8).

Plaintiff, through counsel, timely commenced this action on October 19, 2009. (Docket No. 1).  The Commissioner interposed an Answer on February 4, 2010. (Docket No. 10).  Plaintiff filed a supporting Brief on June 21, 2010. (Docket No. 14).  The Commissioner filed a Brief in opposition on September 3, 2010. (Docket No. 16).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 8).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and this case be dismissed.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained

"even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.   Analysis

### 1.   Commissioner's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2009.  He concluded that Plaintiff had not engaged in substantial gainful activity since April 6, 2003, the amended alleged onset date. (T at 21). The ALJ concluded that Plaintiff had the following conditions, which the ALJ considered "severe" under the Act: back pain secondary to lumbar radiculopathy and mild depression. (T at 25).

However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 28).

The ALJ concluded that Plaintiff retained the residual functional capacity to lift/carry

---

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

50 pounds occasionally and about 20 pounds frequently; sit more than 6 hours in a routine 8-hour workday; and stand/walk more than 6 hours in an 8-hour workday. (T at 29). The ALJ further found that Plaintiff could perform simple and some complex tasks and retained the ability to interact appropriately with supervisors and co-workers. (T at 29).  The ALJ determined that Plaintiff could perform her past relevant work as a personal care aide and seafood clerk. (T at 30).

Accordingly, the ALJ found that Plaintiff had not been under a disability between from April 6, 2003, the amended alleged onset date, and March 28, 2008, the date of his decision.  (T at 31).  As noted above, the ALJ's decision became the Commissioner's final decision on August 23, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 6-8).

### 2.    Plaintiff's Arguments

Plaintiff contends that the Commissioner's decision should be reversed.  She offers four (4) principal arguments in support of this position.  First, Plaintiff contends that the ALJ and Appeals Council erred by finding that her bilateral meniscus degeneration/knee joint effusion was not a severe impairment.   Second, Plaintiff argues that the ALJ did not properly weigh the medical opinions of record.  Third, Plaintiff contends that the ALJ did not adequately assess her credibility.   Fourth, Plaintiff asserts that the ALJ erred when assessing her residual functional capacity.  This Court will address each argument in turn

### a.    Severity of Impairment

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental

ability to do basic work activities. <u>See</u> 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." <u>Gibbs v. Astrue</u>, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. <u>Miller v. Comm'r of Social Sec.</u>, No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); <u>see</u> <u>also</u> 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." <u>Coleman v. Shalala</u>, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" <u>Rosario v. Apfel</u>, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting <u>Bowen v. Yuckert</u>, 482 U.S. 137, 154 n. 12 (1987)).

In this case, Plaintiff points to MRI testing performed in November of 2008 to address her complaints of "[l]eft knee pain . . . [with] [d]ifficulty ambulating." (T at 443). The MRI indicated "meniscus degeneration involving the posterior horn of the medial meniscus" and "moderate to large joint effusion." (T at 443, 444A). Plaintiff also points to clinical notes from October, November, and December of 2008, which document her complaints of knee

pain. (T at 381, 382, 401, 403).  As of October 2008, a clinical note mentioned that Plaintiff was walking with a cane. (T at 403).  A report from July of 2009 indicated that knee surgery had been proposed by Plaintiff's orthopedic surgeon. (T at 13).

Plaintiff contends that the ALJ and Appeals Council should have considered this evidence and concluded that Plaintiff's knee condition qualified as a severe impairment. This Court finds Plaintiff's argument unavailing.  The ALJ's decision was issued on March 28, 2008. (T at 31).  The evidence referenced by Plaintiff post-dates that decision by several months.  As such, the ALJ can hardly be faulted for failing to consider it.  The evidence was submitted to and considered by the Appeals Council, which concluded that the newly submitted evidence did not provide a basis for changing the ALJ's decision.  (T at 7, 9).  This Court finds no error in the Appeals Council's conclusion.

The Appeals Council is obliged to consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see also § 416.1470(b); Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see § 416.1470(b)."

To obtain a review of the additional evidence, the claimant must establish that "the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." Sergenton v. Barnhart, 470 F.Supp.2d 194, 204 (E.D.N.Y.2007) (citing Lisa v. Sec'y of Health & Human Servs., 940 F.2d 40, 43 (2d Cir.1991)).

Plaintiff has not established that the evidence regarding her knee impairment related to her condition during the period between the alleged onset date and the date of the ALJ's decision.  Indeed, a note from Dr. Mitchell Rubinovich dated October 28, 2008, stated that Plaintiff's knee pain "developed about three months ago," indicating that the condition arose in July of 2008, four months after the ALJ's decision.  Thus, this Court finds that the Appeals Council did not err when it decided not to revisit the ALJ's decision. See Shrack v. Astrue, 608 F. Supp.2d 297, 302 (D.Conn.2009) ("Evidence is material in this context if it is relevant to the plaintiff's condition during the time period at issue and it is probative. The SSA thus need not consider evidence related to plaintiff's condition after the date of the ALJ's decision ....") (citing Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir.1988)); Estevez v. Apfel, No. 97–Civ–4034, 1998 WL 872410, at *7 (S.D.N.Y. Dec.14, 1998) ("Materiality requires that the new evidence not concern 'a later-acquired disability or the subsequent deterioration of the previous non-disabling condition.' "); see also 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1) ("If you submit evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application.").

If Plaintiff developed a disabling knee impairment in the months following the ALJ's decision, her proper recourse would have been to file a new application for benefits.  See DeChirico v. Callahan, 134 F.3d 1177, 1184 (2d Cir.1998) (noting that "[the claimant was], of course, free to file a new application for benefits, pursuant to the relevant regulations, and to present new evidence of his disability at that time").  Accordingly, given Plaintiff's failure to show that the newly submitted evidence related to her condition during the time

period at issue, this Court finds no error with regard to this aspect of the Commissioner's decision.  In other words, the Appeals Council was correct in its conclusion that evidence concerning an impairment that arose after the date of the ALJ's decision did not provide a basis for revisiting the ALJ's findings or conclusion.

### b.    Review of Medical Opinion Evidence

Plaintiff also contends that the ALJ did not properly assess several critical pieces of medical opinion evidence.  First, Plaintiff points to a May 2007 assessment from Dr. Joel Amidon, her treating family physician.  In that assessment, Dr. Amidon opined that Plaintiff could frequently lift 5 pounds or less; stand or walk without using an assistive device for less than one hour in an 8-hour day; and sit upright in a straight back chair for less than 2 hours in an 8-hour day. (T at 278).  He also concluded that Plaintiff could never climb, balance, kneel, crouch, crawl, or stoop. (T at 278).

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In this case, the ALJ discounted Dr. Amidon's assessment, noting that it was "unsupported in his own reporting of the one-time examination." (T at 28). Plaintiff challenges this finding, arguing that Dr. Amidon's office actually examined Plaintiff on four (4) occasions prior to the May 2007 assessment. This Court finds no error in the ALJ's conclusion.

A review of the administrative record indicates that the ALJ was correct that Dr. Amidon himself only examined Plaintiff once - on March 6, 2007 - prior to making his May 2007 assessment. Dr. Amidon's notes from that visit described Plaintiff as "doing fairly well, except for chronic headache, low back pain." (T at 274). Dr. Amidon indicated that Plaintiff's back pain was "reasonably controlled with her current therapy." (T at 274).

Plaintiff was seen on two other occasions at Dr. Amidon's office - once on April 19, 2007, for a "[p]ersistent dry cough" (T at 314) and again on April 24, 2007 for a "routine GYN exam" (T at 313). On both occasions, Plaintiff was seen by a member of Dr. Amidon's staff. Thus, a review of the record reveals that the ALJ correctly concluded that Dr. Amidon only examined Plaintiff once and that the physician's May 2007 findings were inconsistent with the observations he made during that single examination. Contrary to

Plaintiff's suggestion, the ALJ's conclusion is not undermined by the fact that Dr. Amidon's staff treated Plaintiff on two other occasions for unrelated medical issues.

Plaintiff also points to an independent medical evaluation performed by Dr, Kenneth W. Gentilezza in August of 2003.  Dr. Gentilezza opined that, as of the date of examination, Plaintiff was capable of performing sedentary work, but only on a part-time basis and in a position that allowed her to alternate sitting and standing frequently and that did not require her to stand for more than four hours. (T at 358).  The ALJ discounted Dr. Gentilezza's finding as lacking in clinical support and because Dr. Gentilezza himself concluded that Plaintiff demonstrated "a high symptom exaggeration level" and "moderate degree of inappropriate illness behavior." (T at 30, 356).

This Court finds the ALJ's consideration of Dr. Gentilezza's assessment supported by substantial evidence and in accord with applicable law.  Dr. Gentilezza indicated that the estimated length of Plaintiff's disability would depend on the length of treatment, which Dr. Gentilezza estimated would be completed within six to eight weeks.   (T at 358). Examinations from later periods are consistent with the ALJ's residual functional capacity and support the ALJ's decision to discount Dr. Gentilezza's findings.  For example, Dr. Ganesh, a consultative examiner, opined in December of 2007 that Plaintiff had no gross limitation with regard to sitting, standing, or walking and a mild to moderate limitation with respect to lifting, carrying, pushing, and pulling. (T at 364).

Dr. William Prebola performed an independent medical examination in September of 2004, in which he found "high symptom exaggeration on pain questionnaire testing" and "symptom magnification tendencies." (T at 339).  Dr. Prebola opined that Plaintiff had made "a full and complete recovery from her work injury," required no further treatment, and had

no work restrictions. (T at 339-40).

The non-examining State Agency review consultant reviewed the record and concluded that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, and stand/walk/sit for about 6 hours in an 8-hour workday. (T at 203).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").  Such reliance is particularly appropriate where, as here, the opinions of the medical consultants are supported by the weight of the evidence.  See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

For the reasons outlined above, this Court finds that the ALJ's assessment of the medical opinions was supported by substantial evidence and in accord with applicable law.

### c.   Credibility

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See

Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

> 1.      [Plaintiff's] daily activities;

14

      2.        The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;

      3.        Precipitating and aggravating factors;

      4.        The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;

      5.        Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;

      6.        Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;

      7.        Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified that her back pain prevents her from sleeping and is a constant source of discomfort. (T at 475).  She also described frequent episodes of hand numbness. (T at 476).  Plaintiff takes five Viocodin painkillers each day, which provide some relief. (T at 478).  Plaintiff testified that her back pain was constant and was an 8 out of 10, even with pain medication. (T at 479-80).  Increased activity aggravates the pain. (T at 480).  Lying down and icing her back provides some relief. (T at 480).  She is able to dress and bathe, but with difficulty. (T at 481).  Plaintiff testified that she was only able to sit for 15 to 30 minutes. (T at 483).  She cannot lift more than 10 pounds. (T at 483-84).

The ALJ discounted Plaintiff's credibility.  He noted a relatively poor work history, significant treatment gaps, and findings by medical examiners that Plaintiff was exaggerating her symptoms. (T at 30).  The ALJ concluded that Plaintiff's medically

determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with the ALJ's residual functional capacity determination.  (T at 30).

This Court finds no reversible error in the ALJ's assessment.  As noted, two medical examiners indicated that Plaintiff was exaggerating her symptoms. (T at 340, 356).  Plaintiff told an independent medical examiner that she could drive for about 45 minutes at a time, ride in a car for one hour, and was independent with regard to dressing, hygiene, and all activities of daily living. (T at 346).  Treatment notes contained contradictory statements concerning whether Plaintiff's back pain was caused by a work-related injury or was of unexplained origin. (T at 193, 274).  As outlined by the ALJ, clinical findings and MRIs also did not support the level of disability alleged by Plaintiff. (T at 27-28).

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

16

There is no question that Plaintiff lives with pain, as the record documents frequent complaints in that regard.  However, "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning." Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).  Moreover, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence [of disability]." 42 U.S.C. § 423(d)(5)(A).

The Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984).  The ALJ's decision should therefore be upheld.

### d.    Residual Functional Capacity

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  A RFC finding will be upheld when there is substantial evidence in

17

the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

The ALJ concluded that Plaintiff retained the residual functional capacity to lift/carry 50 pounds occasionally and about 20 pounds frequently; sit more than 6 hours in a routine 8-hour workday; and stand/walk more than 6 hours in an 8-hour workday. (T at 29). The ALJ further found that Plaintiff could perform simple and some complex tasks and to interact appropriately with supervisors and co-workers. (T at 29).  Plaintiff challenges this finding, pointing to the assessments of Dr. Amidon and Dr. Gentilezza.

For the reasons outlined above, this Court finds Plaintiff's argument unavailing.  Dr. Amidon's assessment was unsupported by clinical evidence, inconsistent with his earlier observations, and based upon a single examination. Dr. Gentilezza's opinion was rendered very shortly after the alleged onset, was temporary in nature, and was unsupported by clinical findings.  Both physicians' conclusions were contradicted by the consultative and independent medical examiners, and contrary to the overall weight of the evidence.  The question before this Court is whether the ALJ's RFC determination was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401.  Based on the foregoing discussion, this Court has no difficulty concluding that the ALJ's determination satisfies this standard.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ thoroughly examined the record,

afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers, the consultative and independent medical examiners, and the non-examining consultants, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   January 23, 2012
         Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the**

Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN. Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.
January 23, 2012

Victor E. Bianchini
United States Magistrate Judge

20